UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
RAHEEL AHMAD KHAN, individually :
and on behalf of others similarly situated, :
:
            Plaintiff, :
  v. :   Civil Action No. 09-3703 (JAP)
:
:
DELL, INC. :
:
: **OPINION**
            Defendants. :
_____:

PISANO, District Judge.

      Plaintiff Raheel Ahmed Khan brings this putative consumer class action against Defendant Dell, Inc ("Dell") on behalf of himself and all other persons who have purchased or leased a Dell Inspiron 600m laptop computer. Khan alleges that the Dell Inspiron 600m laptop computer suffers from a design defect that causes, among other things, the computer to overheat easily under normal operating conditions, thereby shortening the useful lifespan of the machine. Presently before the Court is a motion by Dell to compel arbitration and stay Plaintiff's claims. For the reasons below, Dell's motion is denied.

I.    <u>Background</u>

      Dell is a Delaware corporation that maintains its principal place of business in Texas. Comp. ¶ 8. Dell designed, manufactured and distributed the Inspiron 600m computer. *Id.* This product was sold by Dell from approximately 2003 through 2006. *Id.* Plaintiff is a customer of Dell who purchased the Inspiron 600m, which he alleges suffers from a design

defect. According to Plaintiff, because of its allegedly defective design, his 600m overheated and "burned" his motherboard, which he had to repeatedly have replaced. Compl. ¶ 4. He stopped replacing the motherboard the third time it failed, and Plaintiff alleges that Dell refused to replace the motherboard after Dell said the warranty had expired. *Id.*

Plaintiff further alleges that although Dell represented that the Inspiron 600m was suitable for multimedia applications, because of its allegedly defective design the computer overheated when it was used for such applications in as little as fifteen minutes of use, and it also overheated at other times even if used for non-multimedia functions. *Id.* ¶ 10. According to Plaintiff, when the computer overheated certain parts of it became too hot to touch comfortably, its processor slowed down, and its vital components degraded, reducing the computer's useful life. *Id.* ¶ 12-13. Plaintiff contends that Dell failed to properly design, manufacture and/or test the 600m, did not provide an acceptable solution for the problems caused by the alleged defect, and concealed the existence of the alleged defect. Plaintiff paid approximately $1,200 for his computer.

II.    Dell's Motion

In its motion presently before the Court, Dell alleges that Plaintiff's purchase of his 600m is governed by certain "Terms and Conditions of Sale" ("Terms and Conditions"). The issue at the center of the motion involves the application and interpretation of the Terms and Conditions, which, at the time Plaintiff purchased his computer, contained an arbitration provision that read:

> ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT AND EQUITABLE CLAIMS) BETWEEN CUSTOMER AND DELL, its agents, employees, principals, successors,

>assigns, affiliates (collectively for purposes of this paragraph, "Dell") arising from or relating to this Agreement, its interpretation, or the breach, termination or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationship with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect (available via the Internet at http://www.arbforum. com, or via telephone at 1-800-474-2371). The arbitration will be limited solely to the dispute or controversy between customer and Dell. NEITHER CUSTOMER NOR DELL SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS BY OR AGAINST OTHER CUSTOMERS, OR ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR CLASS ACTION OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.  This transaction involves interstate commerce, and this provision shall be governed by the Federal Arbitration Act 9 U.S.C. sec. 1-16 (FAA).

Declaration of Mary Pape ("Pape Dec."), Ex. 1.  According to Dell, in order for Plaintiff to purchase his 600m through Dell's Internet site (dell.com), Plaintiff was required to click a box indicating that he agreed to Dell's Terms and Conditions, which was available to him on Dell's website.  *Id.* ¶ 8.  Also, Dell states that it had a policy in place at the time Plaintiff purchased his computer pursuant to which Dell provided the Terms and Conditions along with the delivery of any purchased computer.  *Id.*, ¶ 5.  Dell contends that the instant matter should be stayed pending arbitration because the arbitration provision above is binding and covers all of Plaintiff's claims.

Plaintiff opposes Dell's motion.  Plaintiff does not dispute that Terms and Conditions governs the transaction at issue.  Rather, Plaintiff first asserts that the arbitration provision of the Terms and Conditions is unenforeceable because it provides for arbitration to be administered exclusively by the National Arbitration Forum ("NAF") and the NAF is no longer administering consumer arbitrations.  Plaintiff argues that the designation of the NAF

3

(as well as its Code of Procedures) was integral to the arbitration provision and, therefore, the arbitration provision of the Terms and Conditions fails.

Alternatively, Plaintiff contends the arbitration provision is unconscionable and therefore invalid.  Plaintiff argues that the class action waiver is unconscionable under New Jersey law because it violates New Jersey public policy in that it prevents consumers from vindicating low-value, expensive-to-prosecute claims.

Whether The Arbitration Provision Fails Due to the Unavailability of the NAF

When an arbitrator named in an arbitration agreement is unavailable or unable to arbitrate the dispute, such a failure is not necessarily fatal to the parties' agreement to arbitrate.  *See, e.g., McGuire, Cornwell & Blakey v. Grider,* 771 F.Supp. 319, 320 (D. Colo. 1991) ("where the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, a court does not void the agreement but instead appoints a different arbitrator").  Some courts have held that § 5 the Federal Arbitration Act ("FAA")[1] provides a mechanism for the appointment of an arbitrator when a chosen arbitrator is unavailable.  *See Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) ("Where the chosen forum is unavailable … or has failed for some reason, § 5 applies and a substitute arbitrator may be named."); *Carideo v. Dell, Inc.*, 2009 WL 3485933, at *3 (W.D. Wash. Oct.26, 2009) ("In

---

[1] Section 5 of the Federal Arbitration Act ("FAA") provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator ... such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator ... then upon the application of either party to the controversy the court shall designate and appoint an arbitrator ...

9. U.S.C. § 5.

4

general, the FAA provides that where a chosen arbitrator is unavailable, the court may appoint a substitute arbitrator."); *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F.Supp. 1359, 1365 (N.D. Ill. 1990) ("In cases where the failed term establishes the identity of the arbitrator or arbitrators, the [§ 5 of the] Federal Arbitration Act steps in to cure the defect").

While it appears that the Third Circuit has not spoken on the issue, there are three decisions from federal appeals courts that address the issue of whether a court may appoint a substitute arbitrator when the arbitrator specified in the arbitration agreement is unavailable. *See Reddam v. KPMG L.L.P.*, 457 F.3d 1054 (9th Cir. 2006); *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217 (11th Cir. 2000); *In re Salomon Inc. Shareholders' Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). Under both *Reddam* and *Brown*, an arbitration agreement will not fail because of the unavailability of a chosen arbitrator unless the parties' "choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern.'" *Brown*, 211 F.3d at 1222. Under the approach in these two decisions, a court must determine whether the forum choice is "integral," that is, "so central to the arbitration agreement that the unavailability of that arbitrator [brings] the agreement to an end." *Reddam*, 457 F.3d at 1061. If the forum choice is found to be not integral, § 5 applies and the court may name a substitute arbitrator.

The court in *In re Salomon Inc.* rejected the application of § 5 where it found that the parties had agreed to arbitrate exclusively before a particular forum. 68 F.3d at 561 (finding that courts may not use § 5 to "to circumvent the parties' designation of an exclusive arbitral forum"); *see also Dover Ltd. v. A.B. Watley, Inc.*, No. 04-7366, 2006 WL 2987054, *6

(S.D.N.Y. Oct.18, 2006) (holding that "Section 5 ... is inapplicable when the parties have specified an exclusive arbitral forum, but that forum is no longer available"). In *Salomon*, the court found that it was improper to "compel a party to arbitrate a dispute before someone other than the [chosen forum] when that party had agreed to arbitrate disputes only before the [chosen forum] …". *In re Salomon Inc.,* 68 F.3d at 558. The court found that parties in that case had agreed to arbitrate disputes before the New York Stock Exchange ("NYSE"), and when the NYSE refused to hear the dispute, "there [was] no further promise to arbitrate in another forum." *Id.* at 557. Recognizing those cases in which "district courts have appointed new arbitrators when the named arbitrators could not or would not proceed," the *Salomon* court noted that "none of those cases … stands for the proposition that district courts may use § 5 to circumvent the parties' designation of an exclusive arbitral forum." *Id.*

In the instant case, Plaintiff argues that designation of the NAF in the arbitration agreement is "integral" to the parties agreement and, therefore, § 5 does not apply to allow the Court to appoint a substitute arbitrator. Two other district courts – in cases involving the identical arbitration clause at issue here – have recently addressed that very question, *i.e.*, whether the parties' designation of the NAF in the Terms and Conditions was integral to the agreement to arbitrate. These courts reached opposite conclusions. In *Carideo v. Dell, Inc.*, 2009 WL 3485933 (W.D. Wash. Oct 26, 2009), relied upon by Plaintiff, the court found that designation of the NAF in the agreement was integral to the arbitration clause. The *Carideo* court pointed to the language of the arbitration provision providing that disputes "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of

6

Procedure then in effect…" and found that this language "clearly and unequivocally selects the NAF as arbitrator, specifies that the NAF will apply its own rules in the arbitration, and does not provide for an alternative arbitral forum." *Carideo*, 2009 WL 3485933 at *4. Further, the court noted that the selection of the NAF was "not merely an implicit choice, but rather an express one" and that "binding arbitration administered by NAF under its rules is the exclusive and final method for resolving disputes" under the agreement. *Id.* To the *Carideo* court, all of these factors "emphasized the key role of the NAF" and lead the court to conclude that selection of the NAF was integral to the arbitration clause. *See id.* In so holding, the *Carideo* court rejected Dell's arguments that the term "exclusively" in the arbitration clause modified only "binding arbitration" or, alternatively, that the language was ambiguous.

In contrast to *Carideo*, the court in *Adler v. Dell, Inc.*, Civ. 2009 WL 4580739 (E.D. Mich. Dec. 3, 2009), a case relied upon by Dell here, held that the designation of the NAF was not integral to the arbitration clause. In *Adler*, the court found the language of the arbitration clause to be ambiguous as far as the parties' intention in designating the NAF to administer the arbitration. The court found that

> [t]he clause, "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF)" may either refer to the parties' intent to arbitrate all disputes or to the intent of the parties to bring arbitration solely before NAF, or both. At every pass through these words, it is impossible to discern whether the parties intended to embrace arbitration as their exclusive and final recourse for disputes while identifying NAF as a secondary matter to administer the process, or whether they intended NAF arbitration only to be their exclusive and final recourse for disputes. Both interpretations have merit, but there is nothing in the language to indicate which is the intended interpretation.

7

*Adler*, 2009 WL 4580739, *2.  Because the *Adler* court found that it was not "clear" that the term in dispute was "as important a consideration as the agreement to arbitrate itself," the court concluded that the selection of was not integral to the parties' arbitration agreement and, therefore, was enforceable.  *Id.* at 3.

The Court here concurs with the reasoning of the in *Carideo* and finds that the parties' choice of the NAF as arbitrator is integral to the arbitration clause.  "To determine whether a named arbitrator is an integral part of the agreement, the court must look to the 'essence' of the arbitration agreement."  *Ranzy v. Extra Cash of Texas, Inc.*, 2010 WL 936471 * 5 (S.D. Tex. 2010); *see also Zechman*, 742 F. Supp. at 1364 ("courts look to the "essence" of the arbitration agreement").   Under the instant arbitration agreement, disputes between the parties "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect."  Pape Dec. Ex. 1,¶ 13.  The plain language of this clause evinces the parties' intent to arbitrate exclusively before a particular arbitrator, not simply an intent to arbitrate generally.  The NAF is expressly named, the NAF's rules are to apply, and no provision is made for an alternate arbitrator.  The language used is mandatory, not permissive.  *See Ranzy*, 2010 WL 936471 at *5 (agreement stating that disputes "shall be resolved by" NAF and "shall be filed at any NAF office" or NAF website used mandatory language that evinced intent of parties to arbitrate before NAF").  Indeed, designation of the NAF is not merely an "ancillary logistical concern", but is, rather, central to the parties agreement to arbitrate.  *Brown*, 211 F.3d at 1222 ( where "the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern' … the failure of

the chosen forum precludes arbitration.). As such, the unavailability of the NAF precludes arbitration; the Court cannot appoint a substitute arbitrator and compel the parties to submit to an arbitration proceeding to which they have not agreed.[2] Consequently, Dell's motion shall be denied.

III.     Conclusion

For the reasons above, Dell's motion to compel arbitration and stay Plaintiff's claims is denied. An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: August 18, 2010

---

[2] In light of the Court's decision in this regard, it is not necessary to reach Plaintiff's alternative arguments.